

ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

ALEXANDRA CORSI
*Senior Counsel*
Phone: (212) 356-2340
Fax: (212) 356-3509
Email: acorsi@law.nyc.gov

February 6, 2015

BY ECF
Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Clarence Bailey v. City of New York, et al.,
14 CV 2091 (JBW) (VMS)

Your Honor:

I am a Senior Counsel in the Special Federal Litigation Division of the New York City Law Department representing the defendants in the above referenced action. In that regard, I write in response to the Court's Order, dated February 3, 2015, directing defendants to respond to the discovery issues raised by plaintiff in his February 2, 2015 letter.

### Resolved Discovery Issues

An issue raised by plaintiff is his request to produce three witnesses for depositions, including: (1) the author of Mr. Bailey's pre-sentence report; (2) defendant Detective Matthew Collins; and (3) Deputy District Attorney and Chief of the Homicide Bureau Kenneth Taub. Defendants have agreed to produce the witnesses and therefore there is no need for Court intervention with respect to this issue as raised by plaintiff.[1] The author of the pre-sentence report, Probation Officer Terry Wood-Wright, is tentatively scheduled to be deposed February 19, 2015. The parties have conferred with regard to the depositions of defendant Matthew

---

[1] With respect to the deposition of Kenneth Taub, defendants note that plaintiff has not given proper notice pursuant to Federal Rule of Civil Procedure 30(b)(6), and consequently, Mr. Taub is being produced solely as a fact witness.

Collins, and Kenneth Taub, and have agreed upon a number of prospective dates in mid-February and early March for the depositions.[2]

**Expert Discovery**

Plaintiff also addresses in his letter setting a deadline for expert discovery. Defendants, however, cannot reasonably agree to an expert discovery deadline without plaintiff providing defendants with the scope of any of his additional expert discovery beyond the one expert report of Steven Reich, PhD., which was recently produced by plaintiff and is dated January 30, 2015. Indeed, at the December 19, 2014 hearing before Judge Weinstein regarding defendants' Motion for Summary Judgment, plaintiff stated that, in order to prove *Monell*, he believes that he "would be required to present a significant quantity of cases . . . [and] need[s] to have expert testimony that would probative on that point." (Dec. 19, 2014 hearing tr. at p. 33:5-14) Plaintiff's counsel further stated that, plaintiff "would have to proffer an expert to give statistical analysis of how various cases were resolved." (*See id.* at p. 34:7-9). As such, the scope of plaintiff's expert discovery, designated experts, and all other necessary information as required by the Federal Rules of Civil Procedure must be disclosed to defendants by a date certain and with sufficient time to review and/or obtain any rebuttal expert discovery. At this juncture, defendants have not been put on notice of any expert discovery beyond plaintiff's production of Dr. Reich's report.

**Unresolved Discovery Issue**

In addition to resolving any expert discovery, the only issue that remains to be resolved by the court at this juncture and as addressed in plaintiff's February 2, 2015 letter, is plaintiff's *Monell* related discovery demands as identified below. The parties have conferred, and defendants stand on their objections.

Plaintiff's *Monell* claim is based on the Kings County District Attorney's Office's ("KCDA") purported policy of "waiting until the last possible moment to produce exculpatory material—and of objecting to any earlier disclosure—including the names of witnesses and statements of witnesses, that have been requested by defense attorneys." In order to demonstrate the alleged practice by the KCDA, plaintiff seeks discovery of transcripts from particular depositions taken in the case Jabbar Collins v. City of New York, 11 CV 0766 (FB)(RML), including the depositions of: (1) former King's County District Attorney Charles Hynes; (2) former Assistant District Attorney Michael Vecchione; and (3) "any other witness who are and/or were employed by the Kings County District Attorney's Office." Plaintiff further requests "any and all documents marked at such depositions as exhibits." Plaintiff broadly argues that these transcripts and related exhibits should be produced "in so far as the documents requested relate to the same issues in this case." Plaintiff also states that the Collins matter is relevant because, in denying defendants' summary judgment motion in the instant case, Judge Weinstein cited to the Collins case. By solely making a conclusory statement that the Collins

---

[2] Defendants note that defendants also contemplate taking several other depositions, including plaintiff and non-party witnesses, prior to the close of discovery.

case allegedly involved "similar allegations" and nothing more, plaintiff fails to meet his burden that the discovery sought is relevant to the claims in the instant case.

Plaintiff's discovery request for the deposition transcripts and accompanying exhibits of "any other witnesses who are and/or were employed by the Kings County District Attorney's Office" is overbroad, seeks information that is not relevant, and is a mere fishing expedition for deposition testimony which plaintiff cannot even show is relevant, as he has not identified any of the witnesses who were deposed beyond former DA Hynes and ADA Vecchione. Moreover, he fails to articulate how this broad request for the discovery of the deposition transcripts of "any other witnesses" is relevant discovery in the instant matter. As Your Honor is aware, the standard for producing discovery is relevance. As such, plaintiff's failure to even identify the individuals who were deposed in Collins, other than former DA Hynes and ADA Vecchione, establishes that plaintiff has no basis for asking for this entirely overbroad and irrelevant category of discovery as he cannot even identify the deposed witnesses and is therefore unaware of whether there is even relevant information contained in the transcripts.

Plaintiff further argues that the deposition transcripts are relevant for the mere fact that Judge Weinstein cites to Collins in his decision on defendants' summary judgment motion in the instant case. To clarify, defendants note that Judge Weinstein's references to the Collins case in the instant summary judgment opinion relate, however, to whether plaintiff's allegations regarding Hynes' response to alleged misconduct sets forth a *plausible* theory of municipal liability. (*See* Bailey decision dated Jan. 15, 2015, Docket Entry No. 72, at pp. 20, 21, 39). It must be noted that the Collins case settled prior to trial and at no point was there a finding of municipal liability. Judge Weinstein's citation to Collins in the Bailey summary judgment decision, to the contrary of plaintiff's statement, has nothing to do with what are relevant discovery requests or what would be the relevant material needed in this particular case for plaintiff to demonstrate his municipal liability claim. Further, as discussed below, the allegations in Collins were much more extensive than those in the present case, and as such, much of the deposition testimony in Collins has absolutely no relevance to the claims in this case.

To the extent plaintiff has identified witnesses who were deposed in Collins, solely former DA Hynes and ADA Vecchione, defendants object to the production of these deposition transcripts on a number of grounds including relevance, that the request is overly broad, and the fact that portions of these depositions were marked confidential and are not public. First, plaintiff has failed to articulate *how* any portion of these deposition transcripts are relevant to his municipal liability claim other than baldly stating that "the *Collins* case involved allegations similar to those at issue in this case." Second, the request for wholesale copies of all of the deposition transcripts from Collins is overly broad as the Collins case involved *numerous* allegations which are distinct and irrelevant to the claims in this matter. For example, according to the complaint, the claims in Collins included allegations that the KCDA "maintained a policy, custom and or practice of deliberate indifference to violations by his employees of the constitutional rights of individuals who were investigated and criminally prosecuted in Kings County, including, but not limited to, abuse of process, manufacturing of false evidence and testimony through improper coercion of witnesses, *Brady* violations, reliance on false or misleading evidence and argument at trial ("the policy"), and covering up the same." (*See* Collins Compl. at p.79, ¶ 438). Here, the sole allegation as to the unconstitutional policy of the

3

KCDA includes a claim of late disclosure of *Brady* material. As such, the Collins case involved allegations well beyond this one distinct claim, and the request for numerous depositions—without any sort of limitation and which have not even been specifically identified— is certainly nothing more than a fishing expedition for irrelevant material which, in some instances, have previously been marked confidential. Despite defendants' objections to these requests on relevance grounds, plaintiff's only explanation as to how these deposition transcripts and accompanying exhibits are relevant is a conclusory statement that the case includes "similar claims" without even identifying the purported similar claim. Furthermore, the Supreme Court has specifically addressed "similar claims" in the decision of Connick v. Thompson, 131 S.Ct.1350 (2011), a case to which Judge Weinstein refers in his decision on defendants' Motion for Summary Judgment.

In Connick, the Supreme Court rejected using prior *unrelated* incidents or *legally irrelevant* facts to establish a municipal pattern of conduct. But this is exactly what plaintiff is trying to do here by requesting the deposition transcripts from Collins, which are obviously irrelevant and overbroad as there are *several* allegations in Collins which are *not* allegations or even *similar* allegations to the one in the present case. In Connick, the Court held that the district attorney's four prior failures to disclose exculpatory evidence were too dissimilar to the failure to disclose scientific evidence to find a prior similar pattern of conduct to support municipal liability. Connick, 131 S. Ct. at 1360. In this case, like in Connick, plaintiff attempts to use other, dissimilar, irrelevant purported instances of district attorney misconduct to demonstrate municipal liability on the one specific claim alleged in the complaint. However, such information is irrelevant and contrary to the Supreme Court standard for establishing *Monell* liability. Moreover, to the extent plaintiff seeks to discover other alleged instances of *Brady* misconduct committed by KCDA, he has failed to identify the specific documents and actions taken by the assistant district attorney in this case that evinces the purported pattern of misconduct.

Furthermore, defendants are completely perplexed as to how ADA Vecchione's deposition transcript is at all relevant to plaintiff's purported municipal liability claim in the instant matter as, upon information and belief, ADA Vecchione was the line attorney assigned to prosecute Mr. Collins' criminal case—which occurred in the 1990s—more than 10 years before Mr. Bailey's prosecution. Plaintiff has failed to articulate how the deposition of the line attorney could plausibly provide any relevant discoverable material for purposes of the present case.

For the reasons set forth herein, defendants respectfully request that the Court deny plaintiff's motion to compel the above-identified purported *Monell* discovery. Thank you for your consideration regarding the within request.

Respectfully submitted,

/s/

Alexandra Corsi
Senior Counsel

cc: <u>BY ECF</u>
Joshua Kelner
Kelner & Kelner, Esq.
140 Broadway, 37th Floor
New York, New York 10005