```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
CLARENCE BAILEY,                                             :
                                                             :
                    Plaintiff,                               :
                                                             :                MEMORANDUM & ORDER
         -against-                                           :
                                                             :                No. 14 Civ. 2091 (JBW) (VMS)
CITY OF NEW YORK, JOSEPH TALLARINE,                          :
MICHAEL O'KEEFE and MICHAEL COLLINS,                         :
individually and as members of the New York                  :
City Police Department (NYPD),                               :
                                                             :
                    Defendants.                              :
------------------------------------------------------------ X
```

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Clarence Bailey ("Mr. Bailey" or "Plaintiff") brought this action against the City of New York ("City"), Joseph Tallarine, Michael O'Keefe and Michael Collins (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of his rights pursuant to the Fourth, Sixth and Fourteenth Amendments to the United States Constitution as a result of his alleged unlawful arrest, malicious prosecution and denial of due process and a fair trial by the City of New York, through members of the New York City Police Department ("NYPD") and the Kings County District Attorney's Office ("KCDAO"). Compl. ¶¶ 79-87, 96-101, ECF No. 1. Presently before the Court is Plaintiff's motion to compel, pursuant to Federal Rule of Procedure ("Rule") 37, the disclosure of "Reversal Memos" and "Year-End Memos" maintained by the KCDAO, which were entered as Exhibits 223-236 and 237, respectively, in the litigation of Collins v. City of New York, No. 11 Civ. 0766 (FB) (RML) (E.D.N.Y. Feb. 16, 2011). Pl. Second Mot. to Compel ("Pl. Mot. II") at 1, ECF No. 81. In addition, the Court considers Defendants' motion, pursuant to Rule 26(c), for a confidentiality order to apply to the Collins exhibits. Defs. Opp., at 2, ECF No. 82.

1

For the following reasons, Plaintiff's motion to compel is **granted,** and Defendants' motion for a confidentiality order as to the Collins exhibits is **denied**.

I. BACKGROUND

A. Plaintiff's Claims

Mr. Bailey brought charges against the City, under 42 U.S.C. § 1983, for alleged violations of his Fourth, Sixth and Fourteenth Amendment rights, and pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).[1] Compl. ¶ 96-101. Plaintiff alleges that the KCDAO, under the leadership of then District Attorney Charles Hynes ("Mr. Hynes"), had in place an explicit policy "to hold back exculpatory material, including the names and addresses of witnesses who could provide an alibi for the defendant or could otherwise demonstrate that the defendant was not guilty, until the eve of trial." Id. ¶ 67. In Plaintiff's case, he alleges that Assistant District Attorney Howard Jackson ("ADA Jackson") waited until less than a week before trial to produce some initial exculpatory material; waited until the middle of trial to produce additional exculpatory material, including contact information that would have lead directly to witnesses whose testimony would have supported Mr. Bailey's innocence and prevented his wrongful conviction at trial; and denied his attorney any meaningful opportunity to make use of the late-provided materials. Id. ¶ 99. It is Plaintiff's position that these acts constituted a violation of Brady v. Maryland, 373 U.S. 83 (1963),[2] and that the violation was caused by a KCDAO policy. Id. ¶ 100.

---

[1] Pursuant to Monell, a local government can be held liable under 42 U.S.C. § 1983 when a municipal policy or custom causes the constitutional violation that injured the plaintiff. Monell, 436 U.S. at 694.

[2] "The suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. "Evidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed,

2

### B. Procedural Background

After Defendants filed a motion for summary judgment, the Honorable Jack B. Weinstein issued a Memorandum and Order, granting summary judgment regarding Plaintiff's false arrest claim, but denying summary judgment with respect to Plaintiff's Monell, fair trial, and federal and state malicious prosecution claims. Summ. J. Order at 47, ECF No. 72. District Judge Weinstein specifically stated that "given the materials submitted by Plaintiff suggesting a possible pattern and practice by the District Attorney of Kings County in violation of the constitution, the Monell issue cannot be swept under the rug." Id. at 39; see id. at 40.

Following Judge Weinstein's Order, Plaintiff filed his first motion to compel production of witnesses and documentary discovery, including deposition transcripts and deposition exhibits from the Collins case. Pl. Mot. to Compel ("Pl. Mot. I"), ECF No. 74. After reviewing the Parties' written submission and hearing oral argument, this Court granted Plaintiff's motion, stating that,

> As to the Collins DA materials, all depositions and supporting materials must be produced by 2/13/15 except as to materials marked confidential and as to FOIL materials. Counsel may negotiate a narrowing of the request, especially as to exhibits. By [close of business] on 2/10/15, [Defendants] may submit an ex parte letter explaining why any Collins material should remain confidential. As discussed on the record, Plaintiff made a sufficient claim that the Brady issues explored in Collins are likely to lead to admissible Monell information/evidence, and [Defendants] failed to show any privilege or lack of relevance, particularly given that Defendants' counsel did not know the contents of several of the witnesses' testimony/deposition transcripts. Notably, [Defendants] failed to explain that or whether

---

the result of the proceeding would have been different." Cone v. Bell, 556 U.S. 449, 469-70 (2009). In addition, "[u]nder the Rosario rule, the prosecutor is required to make available to the defendant prior to trial '[a]ny written or recorded statement . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony.'" Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) (quoting N.Y. Crim. Pro. L. § 240.45(1)(a)).

3

<blockquote>
any policing or investigatory processes would be revealed to the [Defendants'] or the public's detriment.
</blockquote>

Order at 2-3, ECF No. 77.[3]

Defendants did not submit a letter by the deadline. Thereafter, Judge Weinstein set a deadline for the completion of discovery of October 1, 2015. Minute Entry, ECF No. 78. In addition, after a telephone conference with counsel, this Court permitted Defendants additional time in which to produce or object to the production of any Collins deposition exhibits, and allowed Defendants to, at that time, withhold allegedly confidential Collins materials. Scheduling Order, ECF No. 80.

Plaintiff then filed the motion to compel currently before this Court, in which Plaintiff initially requested the production of Exhibits 223-237 and 401-405 from the Collins case. Pl. Mot. II, Ex. 1. Defendants responded by agreeing to produce Exhibits 232, 234 and 237 subject to a protective order;[4] producing Exhibits 402 and 403; informing Plaintiff that Defendants were unable to locate Exhibit 404; agreeing to produce Exhibit 405 with redactions; and objecting to the rest of the requested exhibits on relevancy and privilege grounds.[5] Defs. Opp. at 2. Plaintiff filed a reply. Pl. Reply, ECF No. 83. The Court also permitted the Parties to submit supplemental letters. Defs. Letter, ECF No. 85; Pl. Letter, ECF No. 86. Thus, Plaintiff seeks

---

[3] Following this Order, Defendants have not raised any additional argument suggesting Defendants are asserting a law-enforcement privilege.

[4] These documents were produced by Defendants "with the understanding that those documents would remain confidential until this issue was resolved by the Court." Defs. Letter at 2, ECF No. 85.

[5] Neither Party has addressed Exhibit 401, described as "Kings County District Attorney's Office Polices and Regulations for Assistant District Attorneys," Pl. Mot. II, Ex. 2; see Defs. Letter at 2-3, and as Plaintiff now requests only the Reversal Memos and Year-End Memos, Pl. Letter at 1, ECF No. 86, the Court assumes the Parties have resolved their dispute as to Exhibit 401, in addition as to Exhibits 402-405.

disclosure of Exhibits 223-231, 233 and 235-236, and the resolution of the confidentiality of Exhibits 232, 234 and 237.

### C. The <u>Collins</u> Litigation

The <u>Collins</u> litigation concerned a former inmate who was granted federal habeas relief after serving more than sixteen years upon his conviction for murder and other offenses, and who then brought an action under § 1983 against the City, members of the NYPD and members of the KCDAO, seeking damages for violations of federal and and New York law stemming from the wrongful deprivation of his liberty. <u>See</u> <u>Collins v. City of New York</u>, 923 F. Supp. 2d 462, 462 (E.D.N.Y. 2013). The <u>Monell</u> claim in <u>Collins</u> accused the KCDAO and Mr. Hynes of "maintaining a policy, custom, and/or practice of deliberate indifference to violations by his employees of the constitutional rights of individuals who were investigated and criminally prosecuted in Kings County, including, but not limited to, abuse of process, manufacturing of false evidence and testimony through improper coercion of witnesses, <u>Brady</u> violations, reliance on false or misleading evidence and argument at trial, and covering up the same." <u>Collins</u>, No. 11 Civ. 0766 (FB) (RML) (E.D.N.Y. Feb. 16, 2011) (Compl. ¶ 79, ECF No. 1).

The discovery produced in <u>Collins</u> included KCDAO Reversal Memos related to purported mistakes made by Assistant District Attorneys in particular cases, and which were sent from the Appeals Bureau to the Bureau where the particular ADA was assigned. Pl. Letter at 1, Ex. 1. In addition, the discovery included Year-End Memos which "broadly surveyed appellate developments from a given year." <u>Id.</u> at 1.

## II. DISCUSSION

Rule 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 37 allows a party to

5

move for an order compelling disclosure or discovery, where the opposing party fails to make a disclosure required by Rule 26(a) and the movant has in good faith conferred or attempted to confer with the opposing party in an effort to obtain the disputed materials without court action. Fed. R. Civ. P. 37(a)(1), (3)(A).

### A. The Collins Exhibits Are Relevant For Purposes of Discovery

It is axiomatic that the federal rules concerning discovery are afforded a "broad and liberal construction." Shahzad v. Cnty. of Nassau, No. 13 Civ. 2268 (SJF) (SIL), 2014 WL 4805022, at *3 (E.D.N.Y. Sept. 26, 2014) (quoting Anderson v. Sposato, No. 11 Civ. 5663 (SJF) (WDW), 2014 WL 794282, at *2 (E.D.N.Y. Feb. 26, 2014)); see Ambac Assur. Corp. v. Adelanto Pub. Util. Auth., No. 09 Civ. 5087 (JFK), 2012 WL 1589597, at *5 (S.D.N.Y. May 7, 2012) (same). "[T]he overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case." Steinberg v. Mount Sinai Med. Ctr., Inc., No. 12 Civ. 51 (SLT) (VMS), 2014 WL 1311572, at *2 (E.D.N.Y. Mar. 31, 2014) (quoting Sabharwal v. Mount Sinai Med. Ctr., No. 09 Civ. 1950 (JBW), 2011 WL 477693, at *2 (E.D.N.Y. Feb.4, 2011)). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery is particularly broad in a federal civil rights action. See Steinberg, 2014 WL 1311572, at *6; King v. Conde, 121 F.R.D. 180, 195 (E.D.N.Y. 1988) (in a civil rights case, "the defendants' case for restricted disclosure must be extremely persuasive").

In this case, Plaintiff contends that the Reversal Memos and Year-End Memos entered as exhibits during depositions in Collins, even those not specifically relating to Brady or Rosario violations, provide significant information concerning the manner in which the KCDAO

addressed and responded to trial misconduct by its attorneys and are therefore relevant to the present case. Pl. Mot. II at 2. Plaintiff seeks these documents as evidence of the notice and policy of the KCDAO concerning the violations challenged by Plaintiff, and because the summary documents may be an efficient approach through which Plaintiff can obtain the information needed to support his claims on the fairly strict discovery timetable required by the Court, rather than Plaintiff asking Defendants for discovery on a case-by-case basis, which would likely require greater resources than will a limited review of the cases on the summary documents. Indeed, Judge Weinstein, in denying summary judgment on the Monell claim, cited to Collins several times, including a quotation from Collins that "[t]he Court concludes that [the] allegations regarding Hynes's response—or lack thereof—to misconduct [involving Brady violations and other prosecutorial misconduct] . . . make plausible [the] theory that Hynes was so deliberately indifferent to the underhanded tactics that his subordinates employed as to effectively encourage them to do so." Summ. J. Order at 21, ECF No. 72 (quoting Collins, 923 F. Supp. 2d at 478); see id. at 39-40 (repeating this quotation from Collins); see also id. at 20 ("The Mollen Report . . . establishes—at least for present purposes—that the misconduct underlying this case . . . was sufficiently widespread to support an inference of deliberate indifference. An entire section of the Report is devoted to 'Perjury and Falsifying Documents,' which is described as 'a serious problem facing the Department.' A jury could reasonably infer from that circumstance, if proven, that the department's policymakers were aware of a serious risk of constitutional violations, and that the failure to take any action in response to the problem—whether through training or otherwise—was the result of deliberate indifference." (quoting Collins, 923 F. Supp. 2d at 479)).

Defendants argue that Plaintiff's Monell claim is more limited in scope than the Monell claim in Collins, as Plaintiff's claim only involves allegations of a policy or practice by the KCDAO of failing to timely disclose Brady and/or Rosario material, and therefore the Reversal Memos and Year-End Memos disclosed in Collins that do not deal with Brady or Rosario violations by the KCDAO are not relevant in this case. Defs. Opp. at 2. Although the Monell claim in Collins asserted several types of constitutional violations, Plaintiff's Monell claim in this case only referenced an explicit policy by the KCDAO and Mr. Hynes "to hold back exculpatory material, including the names and addresses of witnesses who could provide an alibi for the defendant or could otherwise demonstrate that the defendant was not guilty, until the eve of trial." Compl. ¶ 67.

This Court agrees with Plaintiff that the exhibits at issue are relevant and/or calculated to lead to the discovery of relevant evidence. The requested Reversal Memos and Year-End Memos are relevant not only to Plaintiff's allegations of trial misconduct by trial ADAs at the KCDAO, but as they are memoranda circulated throughout the office, they show that these issues, including the failure to timely disclose Brady and Rosario material, were known to the KCDAO and the District Attorney. Such documents may support Plaintiff's position that the City is liable for the KCDAO's failure to timely disclose Brady and Rosario material, which for Plaintiff allegedly resulted in his wrongful conviction and imprisonment. See Compl. ¶¶ 56-73, 96-101.

Although some of the requested exhibits concern types of constitutional violations other than Brady or Rosario violations, the Collins exhibits are nonetheless relevant in that they may shed light on a culture and policies that "effectively encouraged [ADAs] to" engage in "underhanded tactics." Summ. J. Order at 39-40 (quoting Collins, 923 F. Supp. 2d at 478).

8

Moreover, Plaintiff's request is not, in the circumstances of this case, overbroad. Plaintiff seeks only seventeen documents from the Collins litigation. Plaintiff has not requested discovery of all Reversal Memos and Year-End Memos; rather, Plaintiff has narrowed his request to a small number of documents at issue in an action which led to findings that have already been recognized as useful and informative to this litigation. See Summ. J. Order at 20-21, 39-40 (citing to Collins, 923 F. Supp. 2d at 478-79). In these circumstances, the broad, permissive standard of discovery in federal civil rights cases is compatible with allowing Plaintiff some leeway to explore how the alleged Brady and Rosario misconduct related to other findings of constitutional violations at the KCDAO, particularly where, as here, the modest scope of Plaintiff's request protects Defendants from a discovery fishing expedition.

### B. The Collins Exhibits Are Not Privileged

Defendants argue that the requested exhibits from Collins are "internal memos created by attorneys within the KCDAO and circulated within the office, thus subject to privilege." Defs. Opp. at 2. They claim that the "production of these internal memos without the protection of a confidentiality stipulation would defeat one of the purposes of the privilege here," which is "'to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations without fear or later being subject to public ridicule or criticism." Id. (quoting Providence Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 557 (1st Cir. 1992)).[6] Defendants also claim that since the Reversal Memos were produced in the Collins litigation with a cover letter stating, "Pursuant to the parties' agreement, and pending the

---

[6] The Court notes that Providence Journal Co. concerns the deliberative process privilege in the context of a FOIA request for documents pertaining to an investigation of the Rhode Island National Guard. Providence Journal Co., 981 F.2d at 557. There is no FOIA request at issue in the present motion. The only other case cited by Defendants on the issue of privilege was United States v. Nixon, 418 U.S. 683, 705 (1974) (Defs. Opp. at 2-3), in which the court found that the President's communications were not subject to absolute privilege, see id. at 713. That issue is, of course, not before the Court in this case.

9

adoption of a protective order to govern discovery in this matter, these materials are to be kept confidential and to be viewed only by the parties and their counsel," that there was an implicit understanding that these documents were to be treated as confidential, and therefore a confidentiality stipulation should be entered into before these materials are produced to Plaintiff, if they are to be produced at all. Defs. Opp. at 3.

Plaintiff asserts that the exhibits from <u>Collins</u> are not privileged and should not be disclosed subject to any confidentiality agreement or order, as they "were not ultimately treated as [confidential]" in <u>Collins</u>, thereby waiving any possible privilege to which they might otherwise have been subject; were "discussed liberally in the non-confidential portions of the [<u>Collins</u>] transcripts defendant[s] exchanged," including during non-confidential portions of the deposition of Jodi Mandel ("Ms. Mandel"), a Bureau Chief in the KCDAO; and were not included in the "specifically enumerated materials" covered by the confidentiality order issued in <u>Collins</u>. Pl. Reply at 2.[7]

Defendants have not specified, in any of their submissions to the Court, the type of privilege to which they claim the disputed exhibits are subject. This is in and of itself sufficient grounds for denying Defendants' objection to production. Nonetheless, as Defendants' arguments most closely mirror an argument for a finding of the self-critical analysis privilege, and as Defendants' citation to <u>Providence Journal Co.</u> implies that Defendants believe the deliberative process privilege to be relevant, the Court—in the interest of completeness—will consider the application of these privileges.

---

[7] The confidentiality Order issued in <u>Collins</u> was not submitted by the Parties for the Court's review in this case, but Defendants did not dispute Plaintiff's characterization of that Order.

### 1. The Self-Critical Analysis Privilege Does Not Apply

The self-critical analysis privilege "protect[s] a party's confidential analysis of its own performance when that analysis tries to correct problems, on the assumption that disclosure of the analysis during litigation may deter future candid reviews." Ravenell v. Avis Budget Grp. Inc., No. 08 Civ. 2113 (SLT), 2012 WL 1150450, at *4 (E.D.N.Y. Apr. 5, 2012) (quoting In re Ashanti Goldfields Sec. Litig., 213 F.R.D. 102, 104 (E.D.N.Y. 2003)). "Neither the Supreme Court nor the Second Circuit has settled the question of whether the self-critical analysis privilege should be recognized as a matter of federal law." MacNamara v. City of New York, No. 04 Civ. (KMK) (JCF), 2007 WL 755401, at *3 (S.D.N.Y. Mar. 14, 2007) (quoting Mitchell v. Fishbein, 227 F.R.D. 239, 251 (S.D.N.Y. 2005), adhered to on reconsideration, No. 04 Civ. 9216 (RJS) (JC), 2007 WL 3196295 (S.D.N.Y. Oct. 30, 2007); see Ravenell, 2012 WL 1150450, at *4 (same); Devins v. Lazoff, No. 09 Civ. 9599 (PAC) (KNF), 2012 WL 1080182 at *1 (S.D.N.Y. Mar. 30, 2012) (same). To the extent that this privilege is recognizable, "a party invoking the self-critical analysis privilege must show that: (i) the information sought 'resulted from a critical self-analysis undertaken by the party seeking protection'; (ii) 'the public has a strong interest in preserving the free flow of the type of information sought'; and (iii) 'the information is of the type whose flow would be curtailed if the discovery were allowed.'" Devins, 2012 WL 1080182, at *1 (quoting Mitchell, 227 F.R.D. at 252).

The Court need not resolve whether to recognize the self-critical analysis in this case because, assuming arguendo that the privilege could apply, Defendants have nonetheless failed to demonstrate that "the information is of the type whose flow would be curtailed if the discovery were allowed." Devins, 2012 WL 1080182, at *1. In other words, Defendants have not demonstrated that the KCDAO would suppress the type of self-critical analysis at issue

here—such as investigating and disciplining misconduct by ADAs—were discovery allowed in this matter. For example, in MacNamara, when the City argued that the privilege should protect the NYPD's After-Action Reports to prevent that self-critical analysis from being curtailed, the court stated that "the City [gave] NYPD officials too little credit" as "[t]he NYPD has a strong incentive to evaluate its tactics regularly and carefully because, as a government agency, it has an obligation to the public to ensure that its operations are effective." MacNamara, 2007 WL 755401, at *4. The court also cited to "the many cases in which courts have rejected assertions of the privilege on the ground that the self-critical analysis function would occur irrespective of whether the court required that analysis to be disclosed in litigation." Id. (quoting Mitchell, 227 F.R.D. at 252, and collecting cases); see Ravenell, 2012 WL 1150450, at *5 (a "blanket assertion that the disclosure of employment audit documents in any case would discourage evaluation of employee position classifications" was insufficient to support a claim of self-critical analysis privilege); In re Ashanti Goldfields Sec. Litig., 213 F.R.D. at 105 (holding that the corporate defendant had "significant incentives to assess and correct problems in its business strategies and undertake corrective measures to avoid future losses" and that "[t]hose incentives far outweigh any harm that might result from disclosure").

As in MacNamara, Defendants in this case have a strong incentive to evaluate the performance of the ADAs in the KCDAO and to investigate any allegations of corruption or incompetence. Unlike many other circumstances in which the privilege might apply because the reviews would draw on confidential sources or analysis about failures of the KCDAO, the KCDAO memos draw on the results in publicly filed and prosecuted cases, where many of the failures are identified in the public record and in court decisions. This makes the very nature of the events under scrutiny different from self-critical reviews conducted by private entities, such

as in Ravenell, 2012 WL 1150450, at *5, and In re Ashanti Goldfields Sec. Litig., 213 F.R.D. at 105. In any event, as in Ravenell, Defendants' conclusory assertion that their self-critical analysis would be chilled by the prospect of discovery is insufficient to support a finding of privilege. Indeed, Defendants have not provided any relevant legal or factual argument to support this claim, and for these reasons the Court finds that the self-critical analysis privilege does not apply to the disputed Collins exhibits.

### 2. The Deliberative Process Privilege Does Not Apply

The deliberative process privilege may protect from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002) (quoting Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8, (2001)). "An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege if it is: (1) 'predecisional,' i.e., 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' i.e., 'actually . . . related to the process by which policies are formulated.'" Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999)). The burden of establishing this qualified privilege rests with the party asserting the privilege, and the court may consider "the various competing interests for and against disclosure of any document found to qualify as a deliberative document." Pearson v. City of New York, No. 08 Civ. 3208 (SLT) (MDG), 2009 WL 3247433, at *2 (E.D.N.Y. Oct. 6, 2009).

The deliberative process privilege does not apply when "the documents were not created to assist a governmental agency in the formulation of a specific decision on policy." Charles v. City of New York, No. 11 Civ. 0980 (KAM) (JO), 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18,

2011) (internal affairs investigation documents did not "contain the sort of deliberative communications underlying the formation of public policy that the deliberative process privilege is designed to protect," but rather were "part of a routine process to determine whether disciplinary action was warranted"; collecting similar cases concerning internal affairs investigations); see Tigue, 312 F.3d at 80 (to qualify for the privilege, the document must have been "prepared to assist [agency] decisionmaking on a specific issue," and not as part of the agency's routine processes); see also Pearson, 2009 WL 3247433, at *1 ("comments relating to the adequacy of personnel," "logistical issues" and operating decisions "are not policy matters" and are not privileged); Mitchell v. Fishbein, 227 F.R.D. 239, 251 (S.D.N.Y. 2005) (documents related to the recertification of attorneys were not protected by the deliberative process privilege because "decisions whether to certify or decertify an attorney are best characterized as 'routine' decisions of the Screening Committee . . . and thus cannot qualify for the deliberative process privilege"); Otterson v. Nat'l R.R. Passenger Corp., 228 F.R.D. 205, 208 (S.D.N.Y. 2005) (notes made by an agent of Amtrak's Office of the Inspector General concerning an investigation were not protected by the deliberative process privilege because the document was unrelated to "any policy issues"). Likewise, "explaining or interpreting an existing policy or measuring compliance with existing procedures is not predecisional, and thus is not privileged." Pearson, 2009 WL 3247433, at *1; E.B. v. N.Y.C. Bd. of Educ., 233 F.R.D. 289, 292 (E.D.N.Y. 2005) (same). At bottom, "[t]he [deliberative process p]rivilege is properly limited to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials." Charles, 2011 WL 5838478, at *2 (quoting Scott v. Bd. of Educ. of City of E. Orange, 219 F.R.D. 333, 337 (D.N.J. 2004)).

In this case, Defendants merely state that permitting disclosure could inhibit "subordinates" from informing a "decision maker" of their "uninhibited opinions." Defs. Opp. at 2 (quoting Providence Journal Co., 981 F.2d at 557). Although the burden for establishing the privilege rests with Defendants, see Pearson, 2009 WL 3247433, at *2, Defendants have not identified any "specific decision on policy" for which the Collins exhibits were created, Charles, 2011 WL 5838478, at *2. Defendants' vague references to subordinates and a decision maker is not sufficient to meet Defendants' burden. Therefore, this Court finds that Defendants have not demonstrated that the deliberative process privilege applies.

### C. The Collins Documents Need Not Be Produced Subject To A Confidentiality Order

Finally, as discussed supra Section II.B, Defendants contend that if the Collins documents are to be produced, they should be produced pursuant to a confidentiality order. Defs. Letter at 3. Pursuant to Rule 26(c), upon a showing of good cause, a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding the disclosure of discovery." Fed. R. Civ. P. 26(c)(1)(a). "'Good cause' for the issuance of a protective order is established 'when a party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order.'" Liyan He v. Cigna Life Ins. Co. of New York, No. 14 Civ. 2180 (AT) (GWG), 2015 WL 4114523, at *1 (S.D.N.Y. July 8, 2015) (quoting Qube Films Ltd. v. Padell, No. 13 Civ. 8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015)).

To the extent Defendants assert that the Collins documents were designated and maintained as confidential during the Collins litigation, Plaintiff submitted portions of the deposition of Ms. Mandel, in which the disputed documents were introduced as exhibits. Pl. Reply, Ex. A. In this submitted portion of Ms. Mandel's deposition, Exhibits 225-237 are

15

marked for identification, presented to her and then identified. For each Exhibit, Ms. Mandel identified the exhibit number, usually identified the name of the case, and sometimes identified the Bureau or ADA responsible for that case. Id. For example, as to Exhibit 230, the following exchange occurred, without the deposition, or this segment of the deposition, being designated as confidential:

> Q. Turn to exhibit 230. Do you recognize this document?
>
> A. Yes.
>
> Q. What do you recognize it as?
>
> A. It is a reversal memo from Anthea Brufee to the executive in charge of the gray zone and her bureau chief I believe is Aaron Nodditch.
>
> Q. Have you ever seen this memorandum before?
>
> A. No.
>
> Q. Are you aware of whether the ADA involved in this case, People v. Liverpool, was investigated or disciplined in connection with his conduct in this case?
>
> Ms. Krasnow: Objection to form.
>
> A. I don't know. . . .

Id. Furthermore, as to Exhibit 232, Ms. Mandel described the specific type of error at issue in that Reversal Memo. Id. As noted above, the kind of memoranda at issue relate to Court's rulings on publicly filed cases such that the foundational materials of the memoranda are necessarily not confidential.

Notably, neither these portions of Ms. Mandel's deposition transcript nor the specific deposition exhibits was designated as confidential by counsel in Collins during that deposition, notwithstanding the initial cover letter suggesting the exhibits would be treated as confidential. Cf. In Re Phillip Services Corp. Secs. Litig., No. 98 Civ. 0835 (MBM) (DF), 2005 WL 2482494, at *2 (S.D.N.Y. Oct. 7, 2005) (That "two letters were apparently marked as exhibits at a deposition . . . without objection from any party" weighed in favor of finding the attorney-client privilege waived). Plaintiff also attached a portion of the deposition of Michael Vecchione ("Mr. Vecchione"), a former employee of the KCDAO, which was taken two months after Ms. Mandel had testified in the Collins litigation. Pl. Letter at 2, Ex. B. Plaintiff offered this transcript to demonstrate that counsel had designated portions of Mr. Vecchione's deposition testimony as confidential, showing that counsel in Collins were aware of the need to mark restricted matters as confidential. Id. at Ex. B. Moreover, Defendants have not asserted that the defendants in Collins or Defendants in this action took any action to seal the Collins exhibits during or after the Collins litigation. See generally SOHC, Inc. v. Zentis Sweet Ovations Holding LLC, No. 14 Civ. 2270 (JMF), 2014 WL 5643683, at *6 (S.D.N.Y. Nov. 4, 2014) (where exhibits were public filed without redaction "for months," and the defendant "did not take any immediate steps to cure the disclosure" or to "draw the Court's attention to the fact that it believed its confidential information was being made public," "the proverbial cat is out of the bag" and the defendant's request for redaction was denied as moot), reconsideration denied sub nom. SOHC, Inc. v. Zentis Food Solutions N. Am., LLC, No. 14 Civ. 2270 (JMF), 2014 WL 6603951 (S.D.N.Y. Nov. 20, 2014).

Thus, Plaintiff has demonstrated that the Reversal Memos and Year-End Memos were introduced as deposition exhibits in Collins, without any designation of confidentiality or timely

17

action to correct any inadvertent disclosure. Any initial intention to secure the confidentiality of these documents was repudiated by the subsequent litigation decisions, and the treatment of the Collins deposition exhibits as unprotected documents and topics of public discussion in Collins weighs against imposing a confidentiality order in the present case.

Besides arguing that the Collins exhibits should be deemed confidential in this case because they were purportedly treated as confidential in Collins, Defs. Letter at 3, Defendants only argument in support of a confidentiality order is that it would promote self-critical analysis and would prevent "public dissemination" of the documents. Defs. Opp. at 2-3. Defendants raise vague "concerns as to plaintiff's purpose for obtaining this information," and Defendants would put the burden on Plaintiff to demonstrate "why these internal memos of the KCDAO's should not be protected." Id. at 3.

To the contrary, the burden of establishing good cause for a protective order lies with the party seeking the protective order. See Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004); Hassan v. Town of Brookhaven, No. 13 Civ. 4544 (JMA) (SIL), 2015 WL 3455108, at *3 (E.D.N.Y. May 29, 2015). Here, Defendants have not met their burden to "show a clearly-defined and significant harm," and instead provide conclusory assertions that public dissemination would be harmful without supporting those assertions with any factual showing. Allstate Ins. Co. v. Nazarov, No. 11 Civ. 6187 (PKC) (VMS), 2015 WL 1396377, at *2 (E.D.N.Y. Mar. 25, 2015); see Levy v. Ina Life Ins. Co. of New York, No. 05 Civ. 10310 (GEL), 2006 WL 3316849, at *2 (S.D.N.Y. Nov. 14, 2006) ("generalized and conclusory assertions" of harm are "insufficient to show good cause for a protective order"). Defendants have had ample opportunity to make such a showing in this case, but they have failed to do so. "Where the party seeking a protective order does not demonstrate the materials to be actually sensitive, courts are

not obliged to enter orders that limit the freedom of opposing counsel and require the court to police future use or public disclosure of materials obtained in discovery." Levy, 2006 WL 3316849, at *1. This reasoning is particularly apt where, as here, the documents at issue were treated in a non-confidential manner in prior litigation. Thus, as Defendants have failed to demonstrate good cause for the confidentiality order they seek, their request is denied.

### III. CONCLUSION

For the reasons stated herein, this Court **grants** Plaintiff's motion to compel the production of the Reversal Memos and Year-End Memos (Exhibits 223-237) from the Collins litigation, and **denies** Defendants' motion to subject these documents to a confidentiality order. Defendants are ordered to produce the Reversal Memos and Year-End Memos to Plaintiff by August 3, 2015.

Dated: Brooklyn, New York
July 27, 2015

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge